# Hugh Devling *et al. versus* M. P. Little.

In an action by a vendor against a vendee, upon an article of agreement to recover the purchase-money, where the vendee defended on the ground of encumbrances, and the attorney of the holder of the encumbrances is called as a witness and produces releases, but refuses to deliver them until a certain amount is paid, and the court directs the releases to be filed subject to the order of the court, such ruling could in no event work any injury to the defendant, and he therefore cannot allege it as error.

Where the releases were procured by the vendor under an agreement with the vendee, what was said and done by him whilst procuring the releases in pursuance of the agreement, was competent evidence as part of the *res gestæ*.

A stipulation in articles of agreement, for a title clear of all encumbrances, may be waived by the vendee by a subsequent parol agreement; and where

[Devling *v.* Little.]

the vendor has complied with the latter arrangement, and the vendee has failed on his part, the vendor can maintain an action for the purchase-money without having tendered a deed according to the articles.

Equity will not permit a vendee to refuse to perform his part of such parol agreement, and fall back upon his legal right to demand a conveyance free from encumbrances, when it is apparent that his neglect to pay the money is the sole reason why the land has not been discharged from the encumbrance.

A release signed by four of five executors, and by one of them as attorney in fact of the fifth, is good, whether the letter of attorney had any existence or not.

Where a release of a mortgage recited a transfer of the interest of a party in the subject-matter released, and the release was signed by the alleged assignee, and no objection on that account made to its admission in evidence, it will be presumed that if the objection had been made, the interest of the releasor would have been shown.

ERROR to the Common Pleas of *Clinton county.*

This was an action on the case brought by Moses P. Little against Hugh Devling & Co., to recover the first instalment due on an article of agreement for the sale of land. Little, by articles of agreement, dated 17th August, 1854, agreed to sell and convey to defendants on or before the first day of October, 1854, a certain tract of timber land in Clinton county, containing eighteen hundred and fifteen acres, in fee simple and clear of all encumbrances. The defendants contracted to pay $10 per acre, $8000 of which was to be paid on the delivery of the deed, and $5075 on the first day of April, 1855, and a like sum on the first day of December, 1855.

At the time of making this contract Little had not received a conveyance from D. B. Taylor and others, of Philadelphia, from whom he had purchased the tract of which the above comprised about the one-half. On the 7th September, 1854, this conveyance was made, and Little executed to Taylor and others, two mortgages for the sum of $15,740, to secure the unpaid purchase-money. On the 23d of September, 1854, the parties met at the office of L. A. Mackey, Esq., in Lock Haven, who had drawn a deed for the premises from Little to Devling and others, for the land agreed to be conveyed, which Little had executed and left with Mackey.

The mortgages being on record, and several unsatisfied judgments appearing on the records against Little, the contract could not be consummated on that day. The defendants were informed that Mr. Taylor was willing to release the land from the lien of the mortgages Little was to convey to them, if he received $6000 of the $8000, they were to pay in hand. It was then agreed that the defendants should go to Philadelphia and meet Little there on the 29th September, 1854, and that the money should be paid to Taylor, and the releases received there. And that one of the bonds to be given by the defendants should be placed in the hands of Mr. Mackey, as security against the liens of the judgments

[Devling *v.* Little.]

against Little. The releases were prepared and executed, but the defendants did not meet Little at the time and place appointed.

On the 12th of December, 1854, this action was brought.

At the trial of the suit, the plaintiff gave in evidence the article of agreement, and having produced and tendered to the defendants' counsel at bar, the deed, which had previously been left with Mr. Mackey, they called Mr. Mackey, who produced two releases to Mr. Little—one executed by Cornelius Kidder, Charles S. Gilman, Charles S. Gilman for Campbell Graham, C. A. Birkhead, and James Birkhead, Jr., purporting to release tracts Nos. 3636, 3638, 3633, and 3637, from the lien of the mortgage given to them by Mr. Little, bearing date the 29th day of September, 1854 ; the other executed by David B. Taylor, Mary S. Bunting, Charles Cadwalader, C. Cadwalader Sellers, and Benjamin F. Taylor, purporting to release the tracts above mentioned from the lien of the mortgage given by Mr. Little to the said releasors and a certain S. B. H. Vance. No authority was shown in Charles S. Gilman to execute the first-mentioned release for Campbell Graham, and no assignment of the interest of S. B. H. Vance to D. B. Taylor, as recited in the last-mentioned release.

Mr. Mackey testified that these papers had been sent to him by Judge Parsons, the attorney of David B. Taylor, with instructions not to be given up by him until he should receive for Mr. Taylor the sum of $7000. He further stated that he did not feel authorized to let them go out of his possession without receiving the money which he was directed to demand before delivering them. The court, notwithstanding the objections stated by Mr. Mackey, directed the releases and deed to be deposited with the prothonotary, subject to their further order, which was accordingly done.

The deposition of D. B. Taylor was offered in evidence by the plaintiff and objected to by defendants, but admitted by the court. He testified, that in the latter part of September, Little called upon him to get a release of the mortgage on the lands, he sold to Devling & Co. He told Little they would give him a release. He ordered Judge Parsons to prepare a release, which was done and executed by himself and others in September last.

Judge Parsons's deposition was admitted under a similar objection, and he testified to the preparation of the releases.

The court below (BURNSIDE, P. J.) charged the jury as follows :—

"On the 17th of August, 1854, the plaintiff, Moses P. Little, by articles of agreement, agreed to sell and convey, by good and sufficient deed, to the defendants, several tracts and parcels of tracts of land on the waters of Paddy's Run, in this county, containing in all eighteen hundred and fifteen acres, for the price or sum of $10 per acre; $8000 to be paid on the first day of October

[Devling *v.* Little.]

then next, when the deed was made; $5075 on the first day of April, 1855, and the like sum on the first day of December of the same year. On the 14th of September, 1854, Mr. Little, with his wife, executed a deed to the defendants in pursuance of this agreement. No objection is made to the deed, nor is the title questioned. They contend, however,—

"1st. That suit was brought before a conveyance was tendered.

"2d. That at the time suit was brought the plaintiffs were not entitled to call for specific performance.

"3d. That the papers produced at bar did not constitute such a title, under the evidence, as the defendants would be compelled to accept, because one of the releases purports to be made by an attorney in fact, and no power is shown, and the other recites an assignment which is not shown; and the tender is not good under the testimony of Mr. Mackey.

"The answer to these objections depends on the weight given by the jury to the testimony of Mr. Mackey. (The court read the testimony of Mr. Mackey.) Now on the 23d of September, 1854, the time the parties were all at the office of Mr. Mackey, the plaintiff was not in such a situation that he could make a deed, which the defendants were bound in law to accept. There were two mortgages on record against him, amounting in all to $15,800—the sum of $5250 being then due, with interest from the 6th of July, 1853; and there were judgments open in amount about $5000, although it would seem that there was not that amount due upon them. After various propositions made by the plaintiff, Mr. Mackey says that he, Chatham, Stockham, and Churchman, went out into the yard, and after consulting together, came in and made the following proposition to Mr. Little, which was agreed to and accepted by him, viz.: that the parties would go to Philadelphia and meet Little there on the following Friday (the 29th, two days previous to the day on which the deed was to be made, in pursuance of the article of agreement), and there the defendants themselves would pay to David B. Taylor the money due on the mortgages, and obtain his release; and that one of the bonds for $5075 was to be deposited with Mr. Mackey, as security for the liens of the judgments—which bond he was not to deliver up until the judgments were satisfied. That the parties were all agreed to, and satisfied with this arrangement. That Little offered to leave both the bonds, but that they considered one would be a sufficient security against the judgments.

"Did the defendants waive the conditions in the agreement? If you believe the testimony of Mr. Mackey, we instruct you that it was a waiver in law. They have not shown that they went to Mr. Taylor's, in Philadelphia. On the contrary, he proves that they did not call on him, although he was there, ready to carry out the agreement as made in Mr. Mackey's office. The papers

[Devling *v.* Little.]

and the deed are deposited with the prothonotary, subject to the
·order of the court.

" The parties had the right to waive the conditions in the agree-
ment. If you believe they did so, and did not comply or offer to
comply with the agreement sworn to by Mr. Mackey, the plaintiff
is entitled to your verdict."

The jury found for the plaintiffs $8456.

The errors assigned were to the ruling of the court below,
directing the releases to be filed,—in admitting the depositions of
D. B. Taylor and Judge Parsons, and to the charge of the court
to the jury.

*Fleming* and *Linn*, for plaintiffs in error.

*Hale*, contrà.

KNOX, J.—The alleged errors will be noticed in the order in
which they are assigned.

1st. The plaintiffs in error cannot complain that the court
ordered certain releases to be filed of record. In no possible event
can this order affect injuriously the plaintiffs in error's case.

2d and 3d. It is said in the argument that it needs but a glance
at the depositions of D. B. Taylor and Judge Parsons to see their
inadmissibility. We have examined them carefully, and are well
satisfied with their admission. The testimony contained in those
depositions, so far as it was received by the court, is not liable to
the objection made against it, that it related to conversations and
statements to which the defendants were strangers. It was com-
petent for the plaintiff to show his own acts in carrying out the
agreement in reference to the releases; and what was said by him
and others whilst procuring the releases, was proper evidence to
illustrate what was done. A declaration accompanying an act is
often so intimately connected with the thing done that the one
must necessarily be received to explain the other. And such was
the character of the declarations contained in the depositions
referred to.

The remaining assignments are to the charge of the court, and
will be considered together. And here, a brief statement of the
case is required.

Moses P. Little, the plaintiff below, purchased, by articles of
agreement, of D. B. Taylor and others, several tracts of timber
land, lying in the county of Clinton. On the 17th day of August,
1854, he contracted, by writing, to sell to the defendants a part
of the land, which he had so purchased, for the sum of eighteen
thousand one hundred and fifty dollars, eight thousand dollars to
be paid on the first day of October then next, when a deed in fee
simple, clear of all encumbrances, was to be made to the vendees;

[Devling *v.* Little.]

five thousand and seventy-five dollars to be paid on the first day of April, 1855, and five thousand and seventy-five dollars on the first day of December, 1855. The two last payments to be secured by bond and mortgage, to be executed simultaneously with the deed.

After this agreement was made, and before the first payment became due, Little received a deed from Taylor and others for the land purchased, and gave two mortgages for the unpaid purchase-money, amounting in all to the sum of $15740. There were also judgments against Little in Clinton county, which were unpaid, for about three thousand dollars. A few days before the first payment became due on the contract in suit, the parties met in Lockhaven, and the purchasers, learning that the land was encumbered by the mortgages and judgments above mentioned, refused to make the payment until the liens were removed. According to the testimony of Mr. Mackey, at whose office the meeting took place, it was finally agreed that the parties should meet in Philadelphia on the 29th September, when a certain sum of money was to be paid directly to Mr. Taylor, who had offered to release the mortgage liens upon receiving it, and one of the bonds of five thousand and seventy-five dollars was to be deposited with Mr. Mackey as security for the payment of the judgments.

Mr. Little went to Philadelphia before the 29th of September, procured releases to be executed ready for delivery upon payment of the money as agreed upon; but the defendants did not meet him there in accordance with the agreement. Subsequently, on the 12th of December, 1854, this suit was brought to recover the instalment due upon the 1st October of that year.

The cause was tried on the 12th September, 1855. Upon the trial it appeared that the judgments had been satisfied since the suit was commenced. The releases for the mortgages, which were in the hands of Mr. Mackey, were, by the order of the court, deposited with the prothonotary.

The defence was : First, that the action was prematurely brought before a conveyance was tendered by the plaintiff. Second, that at the time suit was brought, the plaintiff was not entitled to call for specific performance, and therefore could not recover. Third, that the releases produced upon the trial and filed were not sufficient to release the lien of the mortgages.

The learned Judge of the Common Pleas instructed the jury that if they believed the testimony of Mr. Mackey, it amounted in law to a waiver of the conditions in the agreement, and if they neglected to comply with their stipulation to pay the money to Mr. Taylor, in Philadelphia, the plaintiff was entitled to recover. The jury found for the plaintiff the amount of the first instalment and its interest. It is this instruction that is complained of in the assignments now under consideration.

[Devling *v.* Little.]

It is possible that the Court of Common Pleas were not strictly correct in making the case turn entirely upon the testimony of Mr. Mackey. But if upon that testimony, the truth of which has been found by the jury, and other admitted facts in the cause, the defence has no validity, the judgment must be affirmed. Let us examine the several grounds of defence.

First, as to the necessity of tendering a conveyance before suit brought.

The deed from Little and wife to Hugh Devling and others for the land contracted for, was duly executed on the 14th September, 1854, and placed in the hands of Mr. Mackey, and by him retained up to the time of trial, when it was deposited with the prothonotary by order of the court. Mr. Mackey testified that the deed was drawn by him at the instance of all the parties, and left with him by Mr. Little, to be delivered to Devling & Co. upon the payment of the instalment due 1st October, and giving the securities mentioned in the contract for the remainder of the purchase-money. This deed was before the parties at Mr. Mackey's office, when the agreement was made that the money should be paid, and the releases obtained from Mr. Taylor, in Philadelphia. It was understood that the deed was ready to be delivered when the vendees were entitled to receive it, and as the jury have found that they have never complied or offered to comply with their agreement to pay the money, and give the securities upon the release of the mortgage liens, a formal tender of the conveyance before suit brought was unnecessary.

Second, "That at the time suit was brought plaintiff was not entitled to call for specific performance."

When the action was commenced the plaintiff's legal title was encumbered by the two mortgages, and by the lien of several judgments, and had the defendants stood upon their written agreement solely these encumbrances must have been removed before the purchase-money, or any part of it, could have been legally demanded. But the plaintiff and the defendants agreed that so much of the first instalment as was necessary should be paid to the mortgagees, upon the residue of the mortgage liens being released, and that one of the unpaid bonds should remain with Mr. Mackey until the judgments were paid and satisfied, and in pursuance of this agreement the plaintiffs actually procured the releases to be executed, ready for delivery upon payment of the money as agreed upon. Now equity will not permit the defendants to refuse to perform this agreement, and fall back upon their legal right to demand a conveyance free from encumbrance, when it is apparent that their neglect to pay the money is the sole reason why the land has not been discharged from the mortgage liens. But, thirdly, it is said that the releases executed by the mortgagees, or filed in court, are not sufficient to discharge the liens of the mortgagees, because one of them was signed by an

[Devling *v.* Little.]

attorney in fact for one of the executors of Hugh Birkhead, deceased, without producing the power of attorney, and the other by Mr. Taylor, as assignee of S. B. H. Vance, without showing the deed of assignment. It is also argued that these releases are not binding upon the mortgagees, but that they can be withdrawn at any time before the money is actually paid, and the releases delivered.

Neither of these objections to the validity of the releases is of any validity.

The release of the Birkhead mortgage is signed by four of the executors of the estate personally, and by one as the attorney in fact of the fifth. This release is unquestionably good, whether the power of attorney has any existence or not.

The release signed by Taylor and others recites a mortgage given to Taylor, Bunting, Cadwallader, Sellers, Benjamin F. Taylor, and S. B. H. Vance, and it also recites that Vance has assigned his interest in the mortgage to David B. Taylor. The release is signed by all the mortgagees except Vance, and upon its face purports to release his interest by his assignee. No objection was made to the release when offered. Had there been, the assignment would doubtless have been read from the records of Clinton county. It is too late to make the objection now. Neither can we permit the plaintiff in error to allege that the mortgagees may possibly withdraw the release without a particle of evidence, that any such intention on their part exists, or ever has existed, and when it is clear that the releases have been ready for delivery for nearly two years, and are now under the control of the court where the suit was brought. Upon the whole case we are of opinion that there is no error in the record which requires a reversal of the judgment. That upon payment of the judgment and delivery of the bond and mortgages, the defendants will be entitled to the deed and releases now deposited with the prothonotary, which will give to them all they contracted for, viz., a title in fee simple, clear of all encumbrances, created by the defendant in error.

Judgment affirmed.